## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**HI-VAC CORPORATION, *et al.*,**

   **Plaintiffs,**    **:**

            **Case No. 2:23-cv-4184**
 **v.**           **Chief Judge Sarah D. Morrison**
            **Magistrate Judge Elizabeth**
            **Preston Deavers**

**DANIEL J. COLEY, *et al.*,**    **:**

   **Defendants.**

### OPINION AND ORDER

Alliance Industries, Inc., and its wholly owned subsidiary, Hi-Vac

Corporation, brought this action against seven former Hi-Vac employees and two

limited liability companies owned by two of those former employees. Now before the

Court are three Motions to Dismiss the Complaint filed by Defendants Brian

Gensler and LGen Services, LLC, Lindsay Lipscomb, and Curtis Coley (ECF Nos.

50, 60, 95) and the Motion to Dismiss an Amended Counterclaim filed by Plaintiffs

(ECF No. 80).

For the reasons set forth below, the Motions are **GRANTED in part** and

**DENIED in part**.

## I.   BACKGROUND

Because the parties bring their Motions pursuant to Federal Rule of Civil

Procedure 12(b)(6), the Court accepts the well-pleaded allegations in the Complaint

(ECF No. 1) and the Amended Counterclaim (ECF No. 79) as true, drawing all

reasonable inferences in favor of the non-moving parties. *See Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016).

Hi-Vac is engaged in the manufacturing, sale, and service of trucks and equipment used in the municipal, industrial, environmental cleaning, and vacuum excavation industries. (Compl., ¶¶ 3, 23.) From April 2015 to April 2022, Daniel Coley served as Hi-Vac's President. (*Id.*, ¶ 9.) However, during his tenure, Daniel[1] "masterminded a scheme carried out by a team of then-current and former Hi-Vac employees and affiliated parties to subvert Hi-Vac's growth and reputation for their own personal benefit[.]" (*Id.*, ¶ 2.) Hi-Vac learned of the scheme in March 2022 when a junior accountant identified "several questionable transactions" in the company's accounting records upon Ms. Lipscomb's absence while on maternity leave. (*Id.*, ¶ 29.) Shortly thereafter, Hi-Vac and Alliance alerted law enforcement and initiated an internal investigation. (*Id.*, ¶¶ 31–32.) Their investigation lasted several months and led to their termination of Daniel and others and their filing of the instant suit asserting claims under federal and Ohio law. (*Id.*, ¶ 32.) In response, Daniel filed a counterclaim, which he later amended. (ECF Nos. 57, 79.)

To the extent additional facts are relevant to the issues raised in the pending Motions, such facts are incorporated in the corresponding sections below.

---

[1] Because Daniel Coley's brother, Curtis Coley, is also a Defendant in this action, the Court will refer to them individually by their first names to avoid confusion.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alteration and quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Directv, Inc. v. Treesh*, 487 F.3d, 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## III.    ANALYSIS

The Court addresses the parties' Motions below. Although each Motion is considered in full, they are analyzed together to the extent the arguments overlap.[2]

### A.    Motion to Dismiss filed by Defendants Brian Gensler and LGen Services, LLC (ECF No. 50) and Motion to Dismiss filed by Defendant Lindsay Lipscomb (ECF No. 60)

Mr. Gensler served as Hi-Vac's Southwest Regional Sales Manager from September 2017 until September 2020. (Compl., ¶ 12.) He is the owner of LGen Services, an entity he formed with his wife. (*Id.*, ¶ 17.) Ms. Lipscomb was an accountant for Hi-Vac who reported directly to Hi-Vac's Controller (Defendant Randy DePuy). (*Id.*, ¶ 13.) From October 2017 until her termination in April 2022, Ms. Lipscomb was responsible for accounts payable, expense reimbursement, and other cash transactions and controls for Hi-Vac. (*Id.*, ¶¶ 13, 27.)

Among other things, Plaintiffs allege that Mr. Gensler and Ms. Lipscomb used Hi-Vac as their "personal piggy bank, directing funds to purposes that they knew were not authorized and would not be authorized if their true purpose was apparent to [Plaintiffs]." (Compl., ¶ 85.) According to Plaintiffs, these Defendants conspired with others to create and utilize a fictitious customer account to hide

---

[2] Plaintiffs also ask that they be allowed to amend their Complaint if the Court agrees with some or all of Defendants' arguments in the Motions to Dismiss. (ECF No. 62, PAGEID # 544; ECF No. 70, PAGEID # 591; ECF No. 98, PAGEID # 917.) These open-ended requests for an advisory opinion on the deficiencies of the Complaint are not proper motions to amend. *See Begala v. PNC Bank*, 214 F.3d 776, 784 (6th Cir. 2000) (emphasis omitted) (affirming district court's determination that "Plaintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies."). Plaintiffs' requests are **DENIED**.

fraudulent, unauthorized payments made to Mr. Gensler through checks issued by Ms. Lipscomb. (*Id.*, ¶¶ 19–20, 96–100, 102, 167, 205.)

Plaintiffs assert the same twelve claims against Ms. Lipscomb and Mr. Gensler, four of which they also bring against LGen Services. (Compl., ¶¶ 156–225, 237–43, 252–314.) These Defendants now move to dismiss all claims against them. (ECF Nos. 50, 60.) The Court addresses their arguments seriatim.

### 1. Alliance's Standing

Initially, Mr. Gensler and LGen Services contend that Alliance lacks standing to assert any claims against them. (ECF No. 50, PAGEID # 266.)

Federal courts are "courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 377 (1994). Pursuant to Article III of the United States Constitution, standing is necessary to the exercise of jurisdiction and "determin[es] the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). If the plaintiff lacks standing, then the federal court lacks jurisdiction. *Tennessee Gen. Assembly v. U.S. Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019).

As a general matter, a plaintiff has constitutional standing under Article III if it (1) suffered an injury in fact (2) that is fairly traceable to the challenged conduct of the defendant(s) and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The plaintiff carries the burden to

establish these requirements, and if there are multiple plaintiffs, each plaintiff must demonstrate standing to bring claims on their own behalf. *See Crawford v. U.S. Dep't of Treasury*, 868 F.3d 438, 452 (6th Cir. 2017) (citing *Lujan*, 504 U.S. at 560–62) ("The 'irreducible constitutional minimum' of standing is that for each claim, each plaintiff must allege an actual or imminent injury that is traceable to the defendant and redressable by the court."); *see also Lewis v. Casey*, 518 U.S. 343, 358 n.6 ("[S]tanding is not dispensed in gross" but rather is a claim-by-claim determination).

Here, Mr. Gensler and LGen Services' argument as to Alliance's standing is twofold—first, that Alliance's only alleged injury is harm to its wholly owned subsidiary (Hi-Vac); and second, that the Complaint does not allege the requisite direct relationship between Mr. Gensler and Alliance. (ECF No. 50, PAGEID # 266–67.) In response, Plaintiffs do not analyze Alliance's standing on a claim-by-claim basis but instead argue that Alliance has standing because of its privity of contract with Mr. Gensler pursuant to a confidentiality agreement that he signed while employed at Hi-Vac (ECF No. 1-6) and because it "shares parallel objectives that align with those of" Hi-Vac. (ECF No. 62, PAGEID # 527–28.)

As to Plaintiffs' first argument, they fail to articulate how the confidentiality agreement provides a basis for Alliance's standing to assert any claims not based on that agreement.

As to Plaintiffs' second argument, a parent company generally does not have standing to sue for a wrong suffered by its subsidiary. *See, e.g.*, *MSS, Inc. v. Maser*

*Corp.*, No. 3:09-cv-00601, 2011 WL 2938424, at *4 (M.D. Tenn. 2011); *see also Schenley Distillers Corp. v. U.S.*, 326 U.S. 432, 435 (1946) (parent corporation has no standing to sue to set aside commission's order denying its subsidiary's permit); *Pepsico, Inc. v. N.L.R.B.*, 382 F.2d 265, 266 (6th Cir. 1967) (parent corporation could not challenge N.L.R.B. ruling on behalf of its wholly owned subsidiary); *Media Gen., Inc. v. Tanner*, 625 F. Supp. 237, 244 (W.D. Tenn. 1985) (citation omitted) (parent corporation could not bring suit for diminution in the value of capital stock because of injury that was actually incurred by subsidiary). Plaintiffs fail to establish that any exception to this general rule applies here.[3]

Accordingly, Alliance has standing only to the extent that it suffered its own direct injury because of the alleged acts of a particular Defendant, and the Court must consider Alliance's standing as to each claim when it addresses Mr. Gensler and LGen Services' arguments (and those of Ms. Lipscomb[4]) on the merits.

---

[3] The cases that Plaintiffs cite to the contrary are inapposite because they stand only for the proposition that parent and subsidiary corporations are the same entity for tortious interference purposes. (ECF No. 62, PAGEID # 528–29 (citing *Neely v. Crown Sols. Co., LLC*, No. 3:13-cv-00109, 2013 WL 6056205, at *16 (S.D. Ohio Nov. 15, 2013) (Merz, M.J.), *report and recommendation adopted*, 2014 WL 1091977 (S.D. Ohio Mar. 18, 2014) (Rice, J.), and *Canderm Pharmacal, Ltd. v. Elder Pharms., Inc.*, 862 F.2d 597, 601 (6th Cir. 1988)).) That "a parent company acting for its own benefit, unlike a corporate agent acting for his or her own benefit, can never be considered a third party *for the purposes of a tortious interference claim*" does not help Plaintiffs here. *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783, 801 (6th Cir. 2007) (emphasis added); (ECF No. 62, PAGEID # 527 (noting *Neely*'s citation of *Servo Kinetics*).)

[4] Although Ms. Lipscomb does not argue that Alliance lacks standing to assert claims against her, as discussed above, the Court must address standing concerns—whether raised by Defendants or *sua sponte*—to meet its obligation to ensure its own jurisdiction. *See Solis v. Emery Fed. Credit Union*, 459 F. Supp. 3d 981, 988 (S.D. Ohio 2020) (Cole, J.) (citation omitted).

## 2. Racketeering (Counts I and II)

Plaintiffs bring their first and second claims against Mr. Gensler and Ms. Lipscomb under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO") and the Ohio Corrupt Practices Act ("OCPA"). (Compl., ¶¶ 156–200.) To sufficiently plead a RICO claim,[5] a plaintiff must establish the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). Mr. Gensler and Ms. Lipscomb dispute that Plaintiffs have adequately alleged these elements. (ECF No. 50, PAGEID # 267; ECF No. 60, PAGEID # 495.)

Courts must liberally construe RICO pleadings. *See Begala v. PNC Bank*, 214 F.3d 776, 781 (6th Cir. 2000). For the first element, a plaintiff must allege that a defendant participated, "directly or indirectly, in the conduct of [the RICO] enterprise's affairs." 18 U.S.C. § 1962(c); *see also Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 792 (6th Cir. 2012) ("RICO liability is not limited to those with primary responsibility for the enterprise's affairs; only 'some part' in directing the enterprise's affairs is required."). For the fourth element, "racketeering activity" includes any act "chargeable" under several generically described state criminal laws and any act "indictable" under numerous specific federal criminal provisions, including bank, mail, and wire fraud. 18 U.S.C. § 1961(1); *see also Sedima*, 473 U.S.

---

[5] The OCPA is modeled after the federal RICO statute. *Portnoy v. Nat'l Credit Sys., Inc.*, 837 F. App'x 364, 372 (6th Cir. 2020). "[A] plaintiff that fails to plead the elements necessary to establish a RICO violation also fails to state a claim under the OCPA." *Ogle v. BAC Home Loans Servicing LP*, 924 F. Supp. 2d 902, 913 (S.D. Ohio 2013) (Smith, J.).

at 481–82. To the extent that fraud is the predicate offense for the claim, courts apply the heightened pleading standard outlined in Federal Rule of Civil Procedure 9(b).[6]

Here, Plaintiffs allege, among other things, that Mr. Gensler and Ms. Lipscomb knowingly acted in concert with several other Defendants to make fraudulent payments to Mr. Gensler and LGen Services through a fictitious Hi-Vac vendor account. (Compl., ¶¶ 86–89, 96–100, 168.) The Complaint goes into some detail about their roles in issuing multiple checks and creating the fake account to look like a legitimate Hi-Vac customer using knowledge of Hi-Vac's internal controls and confidential information. (*Id.*, ¶¶ 97–102). Plaintiffs assert that Mr. Gensler and Ms. Lipscomb used the mail, telephone, and internet in furtherance of their scheme, directing the Court to substantial payments made by check to Mr. Gensler in Texas from Hi-Vac in Ohio. (*Id.*, ¶¶ 7–8, 12, 17, 99, 162.) The Complaint also alleges that Ms. Lipscomb issued a company credit card to Mr. Gensler when he was no longer employed at Hi-Vac and that she received an unauthorized check while

---

[6] Rule 9(b) requires that the circumstances constituting fraud must be pled "with particularity," meaning that a complaint must "allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993) (internal quotations and citation omitted). Rule 9(b) does not "defeat the general policy of simplicity and flexibility in pleadings," *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 503–04 (6th Cir. 2008) (internal quotations and citation omitted), but it is intended to "provide a defendant with 'at least the minimum degree of detail necessary to begin a competent defense'" and "discourage fishing expeditions ... which appear more likely to consume a defendant's resources than to reveal evidence of wrongdoing." *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 606 F. Supp. 2d 722, 736 (S.D. Ohio 2009) (Graham, J.) (citation omitted).

she was on maternity leave. (*Id.*, ¶¶ 24, 115.) These allegations, which are incorporated into the RICO and OCPA claims (*see id.*, ¶¶ 156, 185) and which the Court must accept as true for purposes of the instant Motions, are sufficient to plead the elements of Hi-Vac's claims against Mr. Gensler and Ms. Lipscomb.[7]

However, Plaintiffs have failed to demonstrate that Alliance suffered an injury in fact relative to its RICO and OCPA claims. Standing in a civil RICO case requires a plaintiff to show (1) a violation of RICO; (2) an injury to the plaintiff's business or property; and (3) that the injury was proximately caused by the RICO violation. *Stooksbury v. Ross*, 528 F. App'x 547, 556 (6th Cir. 2013). The allegations in the Complaint only go toward a RICO injury to Hi-Vac, and Plaintiffs fail to allege any RICO injury to Alliance.

Accordingly, Alliance's RICO and OCPA claims against Mr. Gensler and Ms. Lipscomb are **DISMISSED**, but Hi-Vac's claims may proceed at this stage.

### 3.    Fraud (Count III)

Mr. Gensler and LGen Services next move to dismiss Plaintiffs' common law fraud claim against them,[8] arguing that Plaintiffs have failed to allege specific facts

---

[7] Mr. Gensler also argues that the RICO and OCPA claims should be dismissed because Defendants, as Hi-Vac's upper management and executives, do not constitute an enterprise. (ECF No. 50, PAGEID # 270 n.4.) Although Mr. Gensler correctly observes that "an organization cannot join with its own members to do that which it normally does and thereby form an enterprise separate and apart from itself," that is not the allegation here. (Compl., ¶ 159 (defining the enterprise as consisting only of "then-current and former employees and contractors of Hi-Vac who were led by President Daniel Coley").)

[8] Even though Mr. Gensler is a Texas resident and performed at least some of his work for Hi-Vac outside of Ohio, the parties apply Ohio law in their Motion to Dismiss briefing, so the Court does as well. *See Wilkes Assocs. v. Hollander Indus.*

in support of their claim as required by Rule 9(b). (ECF No. 50, PAGEID # 271.) Similarly, Ms. Lipscomb seeks dismissal of this claim on the ground that Plaintiffs have not adequately pled scienter. (ECF No. 60, PAGEID # 504.)

To prevail on this claim, Plaintiffs must show that Mr. Gensler, LGen Services, and/or Ms. Lipscomb (1) made (or, if there was a duty to disclose, concealed) a false or fraudulent representation of material fact; (2) knew or believed the representation was false; and (3) intended to induce Plaintiffs to rely on the misrepresentation. *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998). Plaintiffs must also demonstrate that (1) they reasonably or justifiably relied on the misrepresentation; and (2) their injuries were proximately caused by the misrepresentation. *Id.*

As discussed above, a plaintiff must state its fraud claim with particularity. *See Voutsiotis v. PNC Bank, Nat'l Ass'n*, No. 5:23-cv-02305, 2024 WL 3345493, at *6 (N.D. Ohio July 8, 2024) (citing Fed. R. Civ. P. 9(b) and Ohio Civ. R. 9(B)). Hi-Vac has done that here as to Mr. Gensler—it alleges that Mr. Gensler sought "fake commissions" and "fraudulent expense reimbursement" from Hi-Vac and that he had a role in the utilization of a fictitious account to look like a legitimate Hi-Vac customer so that Hi-Vac could issue unauthorized payments to him. (Compl., ¶¶ 86–102, 205.) Hi-Vac identifies the amount of the fraudulent payments Mr. Gensler received (approximately $139,896.00), the timing and place of the scheme (on or

---

*Corp.*, 144 F. Supp. 2d 944, 949 n.4 (S.D. Ohio 2001) (Rice, J.) (quoting *ECHO, Inc. v. Whitson Co., Inc.*, 52 F.3d 702, 707 (7th Cir. 1995)) ("Where neither party argues that the forum state's choice-of-law rules require the court to apply the substantive law of another state, the court should apply the forum state's substantive law.")

about April 2019 to August 2020 in Texas and Ohio), and its resulting injury (lost funds). (*Id.*, ¶¶ 97–99, 205, 212–13.) This is sufficient.

Hi-Vac has also stated a fraud claim against Ms. Lipscomb. Specific allegations in the Complaint, which the Court must construe in the light most favorable to Plaintiffs, make it plausible that Ms. Lipscomb was aware of the impropriety of her conduct. (*See, e.g.*, Compl., ¶¶ 95–96 (alleging that Ms. Lipscomb and others leased and funded hunting camp despite knowing authorization had not been provided); ¶ 102 (alleging that Ms. Lipscomb and others used the fake customer account to hide fraudulent transactions); ¶ 115 (alleging that Ms. Lipscomb issued a credit card to Mr. Gensler knowing he was no longer employed).)

However, Hi-Vac has not sufficiently alleged a fraud claim against LGen Services. The only allegation stated with particularity against LGen Services is that a check was issued to it in March 2022 for $11,000. (Compl., ¶¶ 87–89, 205.) There are no allegations that LGen Services made any representations, false or otherwise, to either of the Plaintiffs.

Alliance has failed to demonstrate that it suffered an injury in fact because of any alleged fraud. For instance, although Mr. Gensler presented a proposal to Alliance senior management to lease land in Texas to use as a hunting camp for client entertainment (Compl., ¶ 93), Mr. Gensler and Ms. Lipscomb allegedly used Hi-Vac funds, not Alliance funds, to secretly lease the camp and operate it without authorization (*id.*, ¶ 95).

12

Thus, only Hi-Vac's fraud claims against Mr. Gensler and Ms. Lipscomb may proceed—all other fraud claims against them and/or LGen Services are **DISMISSED**.

### 4. Misappropriation of Trade Secrets (Counts IV and VI)

Plaintiffs allege that Mr. Gensler and Ms. Lipscomb violated federal and state laws prohibiting the misappropriation and improper use of trade secrets, namely the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836, and the Ohio Uniform Trade Secrets Act ("OUTSA"), Ohio Rev. Code 1333.61, *et seq*.

To state a claim for misappropriation of trade secrets under the DTSA, a plaintiff must show (1) the existence of a protectable trade secret; and (2) the misappropriation of the trade secret by defendant. *Int'l Petro. Prods. & Additives Co. v. PXL Chems. BV*, No. 1:20-cv-00586, 2022 WL 4537974, at *12, (S.D. Ohio Sept. 28, 2022) (Marbley, J.). For an OUTSA claim to survive a motion to dismiss, a plaintiff must allege "(1) the existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; and (3) the unauthorized use of a trade secret." *Heartland Home Fin., Inc. v. Allied Home Mortg. Capital Corp.*, 258 Fed. App'x 860, 861 (6th Cir. 2008) (citation omitted). "Courts consider these state and federal law claims together because the definition and requirements of the OUTSA and DTSA are essentially the same." *Sunjoy Indus. Group., Ltd. v. Permasteel, Inc.*, No. 2:22-cv-1896, 2023 WL 406211, at *7 (S.D. Ohio Jan. 25, 2023) (Vascura, M.J.).

"Trade secret" entails information "that the owner seeks to protect as confidential and that has economic value from not being publicized." *Int'l Petro. Prods.*, 2022 WL 4537974, at *12 (citing 18 U.S.C. § 1839(3) and Ohio Rev. Code § 1333.61(D)). "Misappropriation" covers a wide range of conduct. For example, the OUTSA defines misappropriation as the "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." Ohio Rev. Code § 1333.61(B)(1). Under the DTSA, misappropriation can be established by the improper acquisition, disclosure, or use of a trade secret without consent. 18 U.S.C. § 1839(5).

The sort of conduct contemplated in the Complaint is sufficient to allege claims under both statutes. Plaintiffs set forth the trade secrets that Mr. Gensler and Ms. Lipscomb acquired and used without their consent: "confidential information regarding customers, pricing, and accounting practices," which information has independent economic value due to its secrecy. (Compl., ¶¶ 219, 221, 238.) Although the Complaint is not a model of clarity as to the exact roles of Ms. Lipscomb and Mr. Gensler, it is enough at this stage that Plaintiffs allege that they were involved in using this customer information to create and use a fictitious account through which fraudulent checks were funneled and issued. (*Id.*, ¶¶ 97–99, 107.) The misappropriated trade secrets belong to both Hi-Vac and Alliance, and both entities took steps to protect the information by causing Mr. Gensler and Ms. Lipscomb to sign confidentiality agreements. (*Id.*, ¶¶ 104–107, 220, 223, 240; ECF Nos. 1-5, 1-6.) As such, the Motions are **DENIED** as to these claims.

14

### 5. Breach of Fiduciary Duty (Count VIII)

A "fiduciary relationship" is one in which "special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Stone v. Davis,* 419 N.E.2d 1094, 1098 (Ohio 1981) (internal quotations omitted). A "fiduciary" has "a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking." *Strock v. Pressnell*, 527 N.E.2d 1235, 1243 (Ohio 1988). Plaintiffs argue that Mr. Gensler and Ms. Lipscomb failed to observe their fiduciary duties by participating in the scheme and other conduct described in the Complaint. (Compl., ¶¶ 253–54.)

Although some employees may have fiduciary relationships with their employers, "[n]ot all employees are fiduciaries." *Laurel Valley Oil Co. v. 76 Lubricants Co.*, 797 N.E.2d 1033, 1039 (Ohio Ct. App. 2003). Rather, a fiduciary relationship requires "more than the ordinary relationship of employer and employee." *State ex rel. Charlton v. Corrigan*, 521 N.E.2d 804, 806 (Ohio 1988) (citation omitted). To determine whether a fiduciary relationship exists between an employee and employer, "emphasis should be placed upon whether the assigned job duties require, as essential qualifications over and above technical competency requirements, a high degree of trust, confidence, reliance, integrity and fidelity." *Id.* (discussing considerations in context of whether fiduciary relationship exists between public official and appointed employees); *see also State v. Massien*, 926 N.E.2d 1282, 1290 (Ohio 2010). Job duties that require a great degree of discretion support the existence of a fiduciary relationship, whereas assigned duties of a

15

routine character do not involve the degree of discretion or trust necessary to be considered a fiduciary. *Charlton*, 521 N.E.2d at 806–07. A further consideration involves whether the employee's responsibility includes "daily discretionary decisions" affecting persons served by the employer that require the employee to be "of higher than normal reliability." *Id.* at 807.

In this case, Plaintiffs have not pled that Mr. Gensler or Ms. Lipscomb owed Alliance a fiduciary duty. They did not work for Alliance, and their confidentiality agreements (which provided for their at-will employment relationship with Hi-Vac, *see* ECF Nos. 1-5, 1-6) do not create fiduciary duties on their part. (*See* Compl., ¶¶ 253–54 (alleging only that Mr. Gensler and Ms. Lipscomb failed to observe common law "duties of good faith and loyalty to their employer").)

As to Hi-Vac, Plaintiffs allege that Mr. Gensler was a regional sales manager who had access to the company's computer systems and computer networks as part of his employment. (Compl., ¶¶ 12, 28.) Although Mr. Gensler was authorized to "use funds" and "enter into lease agreements" (ECF No. 62, PAGEID # 539), these allegations are insufficient to allege that Hi-Vac placed a high degree of trust, confidence, and discretion into him.[9] Computers are now a staple of many

---

[9] Plaintiffs also argue in their response to Mr. Gensler's Motion that he "oversaw all of the company's sales for the entire Southwest region of the United States" and "had discretion in deploying resources, prioritizing sales targets, and in selecting sales tactics." (ECF No. 62, PAGEID # 539.) But these facts do not appear in the Complaint. *See, e.g.*, *Guy v. Absopure Water Co.*, No. 20-12734, 2021 WL 735787, at *2 (E.D. Mich. Feb. 25, 2021) ("[A] Rule 12(b)(6) motion cannot be granted based on 'alternative facts' … not pleaded by a plaintiff."); *Carrier Great Lakes v. Cooper Heating Supply, Inc.*, 2002 U.S. Dist. LEXIS 10417, at *7 n.3 (W.D. Mich. June 5, 2002) (dismissal is appropriate based on the contents of a complaint, "not what Plaintiff asserts in a brief that the claims should have been").

workplaces, and many employees generally have access to their employer's computer systems and network to perform their jobs.

The same is true for Ms. Lipscomb. The Complaint provides that she served as an accountant for Hi-Vac, reported to Mr. DePuy, had access to Plaintiffs' computer systems and networks, and was responsible for accounts payable, expense reimbursement, and other cash transactions and controls. (Compl., ¶¶ 13, 27, 28.) What is absent from the Complaint are any allegations that support the proposition that these tasks involved a high degree of trust or fidelity. *See Charlton*, 521 N.E.2d at 806–07. Plaintiffs essentially argue that, as a matter of law, an accountant is a fiduciary for the company for which she works. This is not the case. Although Ms. Lipscomb had access to company funds and could issue and enter payments into Hi-Vac's system, she did not approve or sign company checks. (Compl., ¶ 89.) Nor are there any allegations that she had any discretion in performing her job for Hi-Vac—rather, she acted under the supervision and discretion of Mr. DePuy, and he served as the "financial gatekeeper." (*Id.*, ¶ 34.)

Thus, because Plaintiffs have failed to allege that the relationship between Mr. Gensler or Ms. Lipscomb and Hi-Vac was anything more than that of an employee and employer, they have failed to show the existence, let alone a breach, of a fiduciary duty.

### 6. Conversion (Count IX)

"Conversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a

claim inconsistent with his rights." *Semco, Inc. v. Sims Bros., Inc.*, No. 9-12-62, 2013 WL 5347400, at *8 (Ohio Ct. App. Sept. 23, 2013) (citation omitted). "The elements of conversion are: (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *Id.* (quoting *Miller v. Cass*, No. 3-09-15, 2010 WL 1740891, at *8 (Ohio Ct. App. May 3, 2010)).

In support of the dismissal of Plaintiffs' conversion claim against them, Mr. Gensler and LGen Services insist that "all sums deposited by Gensler were written on checks that were authorized by the President of Hi-Vac and signed by the controller. At the time the deposits or charges were made … they were authorized by management of Hi-Vac who was telling Gensler what to do." (ECF No. 50, PAGEID # 278.) But this argument ignores that the Complaint plainly alleges that Mr. Gensler and LGen Services conspired with Hi-Vac employees, including Daniel and Mr. DePuy, to issue payments to them to which they were not entitled. (Compl., ¶¶ 86–89, 99, 100, 102, 205.) Plaintiffs have properly plead a claim for conversion against them on behalf of Hi-Vac.

Looking to Ms. Lipscomb, she argues that any conversion claim against her must be dismissed because Plaintiffs have not alleged that "a determinate sum was entrusted to [her] for a specific purpose" and because she lacked the authority to transfer (and, as a result, convert) Hi-Vac funds. (ECF No. 60, PAGEID # 508; ECF No. 74, PAGEID # 632.) Both arguments are unavailing. The Complaint readily identifies the amounts and sources of the payments that Plaintiffs contest. (Compl.,

18

¶¶ 87–89, 99, 205.) And, as with Mr. Gensler, the Complaint alleges Ms. Lipscomb's participation in a conspiracy to issue fraudulent payments, including through her use and control of funds in a fictitious company account. (*Id.*)

But, as for many of their other claims, Plaintiffs have failed to allege that Alliance suffered an injury in fact because of any alleged conversion. Thus, Alliance is without standing to assert this claim against Mr. Gensler, LGen Services, or Ms. Lipscomb, and it is **DISMISSED**.

### 7.     Breach of Contract (Count X)

Mr. Gensler and Ms. Lipscomb next seek dismissal of Plaintiffs' breach of contract claim. Mr. Gensler argues that he cannot be liable for any alleged breaches that occurred after his employment with Hi-Vac ended in 2020. (ECF No. 50, PAGEID # 278.) He and Ms. Lipscomb further contend that the claim is non-specific, conclusory, and duplicative of Plaintiffs' misappropriation claims. (*Id.*, PAGEID # 279; ECF No. 60, PAGEID # 509.)

To avoid dismissal, Plaintiffs must demonstrate (1) the existence of a contract; (2) their performance; (3) Mr. Gensler and/or Ms. Lipscomb's breach; and (4) damage or loss because of the breach. *See Asset Mgmt. One LLC v. U.S. Bank Nat. Ass'n*, 569 F. App'x 438, 441 (6th Cir. 2014) (citation omitted). The first two prongs are satisfied—the contracts at issue here are Mr. Gensler and Ms. Lipscomb's confidentiality agreements, which are expressly between them as individuals and Hi-Vac, along with "any of its Affiliates." (ECF No. 1-5, PAGEID # 103; ECF No. 1-6, PAGEID # 108.) "Affiliates" is defined as including "only those

affiliated or related entities of Hi-Vac to which the employee actually performs services or has access to confidential information during his/her employment with Hi-Vac, including, but not limited to, Alliance Industries, Inc." (*Id.*)

Plaintiffs have also sufficiently alleged that while Mr. Gensler was employed at Hi-Vac, he failed to fulfill his contractual obligations by "by utilizing Hi-Vac's confidential information and trade secrets regarding customer account information for his own benefit, misusing company credit cards, and retaining money that was fraudulently issued to him." (Compl., ¶¶ 100, 106, 271; *see, e.g.*, ECF No. 1-6, PAGEID # 110 ("Employee agrees to abide by all of the Company's policies and procedures[.]").) Plaintiffs put forth similarly adequate allegations with respect to Ms. Lipscomb and allege that the two employees' conduct caused them damages. (*Id.*, ¶¶ 99, 120–22, 205, 275.) That is satisfactory at this stage of the proceeding.

### 8.     Unjust Enrichment (Count XI)

An unjust enrichment claim requires a plaintiff to show that (1) a benefit was conferred by the plaintiff upon the defendant; (2) the defendant had knowledge of the benefit; and (3) the defendant retained the benefit under circumstances where it is unjust to do so without payment. *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984).

Under Ohio law, "[u]njust enrichment operates in the absence of an express contract ... to prevent a party from retaining money or benefits that in justice and equity belong to another." *Robins v. Global Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 646 (N.D. Ohio 2012) (internal quotations omitted). But "a plaintiff may not

recover under the theory of unjust enrichment when an express contract covers the same subject." *Mitchell v. Cal. Casualty Gen. Ins. Co. of Or.*, No. 3:18-cv-228, 2019 WL 6877648, at *1 (S.D. Ohio Dec. 17, 2019) (Ovington, M.J.) (internal quotations omitted).

There is conflicting authority in this District as to whether a party may plead unjust enrichment as an alternative theory of recovery where the parties do not dispute that a valid, enforceable contract controls. *Compare, e.g.*, *Bush Truck Leasing, Inc. v. Cummins, Inc.*, No. 1:18-cv-871, 2020 WL 3871322, at *8 (S.D. Ohio July 9, 2020) (McFarland, J.), *with Cunningham Prop. Mgmt. Trust v. Ascent Resources-Utica, LLC*, 351 F. Supp. 3d 1056, 1066 (S.D. Ohio 2018) (Sargus, J.). The undersigned has been reluctant to dismiss claims brought in the alternative at the motion to dismiss stage—because "the scope of the parties' contract remain[s] to be developed in discovery, … it would be premature to dismiss [the] unjust enrichment claim at this stage in the litigation." *Highman v. Gulfport Energy Corp.*, No. 2:20-cv-1056, 2020 WL 6204344, *3 (S.D. Ohio Oct. 22, 2020) (Morrison, J.) (citations omitted). This rationale applies in this case to the extent the moving Defendants argue that Plaintiffs may not maintain their unjust enrichment claim due to the existence of the confidentially agreements. (*See, e.g.*, ECF No. 66, PAGEID # 559 n.14.)

Notwithstanding the above, Mr. Gensler, LGen Services, and Ms. Lipscomb argue that Plaintiffs fail to identify the benefit or specific amount that they have been unjustly enriched. (ECF No. 50, PAGEID # 280; ECF No. 60, PAGEID # 510.)

But the Complaint plainly alleges, among other things, that (1) Mr. Gensler deposited checks and used a company credit card during or after his employment with Hi-Vac without Plaintiffs' knowledge or consent; (2) LGen Services received a $11,000 check; and (3) Ms. Lipscomb retained a $4,650 check issued to her while she was on maternity leave. (Compl., ¶¶ 87, 89, 96–109, 120–22, 205.) This is sufficient to survive a motion to dismiss.

The Defendants' other arguments to the contrary also fail because they are not bases for dismissal of the claim but are rather factual disputes to be resolved later in the litigation. (ECF No. 50, PAGEID # 280 (arguing that Mr. Gensler believed the checks were authentic reimbursements); ECF No. 74, PAGEID # 634 (arguing that Ms. Lipscomb had no knowledge of wrongdoing).)

With that said, Plaintiffs have failed to allege that Alliance suffered an injury in fact with respect to their claim for unjust enrichment, particularly because the funds allegedly used to unjustly enrich the moving Defendants belonged to Hi-Vac. (*See, e.g.*, Compl., ¶ 205.) Alliance is without standing to assert this claim, and it is **DISMISSED**.

### 9. Civil Conspiracy (Count XII)

A civil conspiracy claim requires: (1) a malicious combination; (2) of two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy. *Universal Coach, Inc. v. New York City Transit Auth., Inc.*, 629 N.E.2d 28, 33 (Ohio Ct. App. 1993) (citation omitted). Here, for similar reasons as those supporting Plaintiffs' civil RICO claims, Plaintiffs have

sufficiently alleged that a civil conspiracy existed and that Mr. Gensler and Ms. Lipscomb were a part of the conspiracy through their roles of arranging and receiving unauthorized checks. (*See, e.g.*, Compl. ¶ 285 (alleging that Mr. Gensler and Ms. Lipscomb "agreed to work in concert" with others "to exploit Hi-Vac's cash, reputation, and other resources through fraudulent and improper transactions[.]").)

But Plaintiffs have again failed to allege that Alliance suffered an injury in fact due to alleged civil conspiracy. Thus, Alliance is without standing to assert this claim, which is accordingly **DISMISSED**.

### 10. Injury Through Criminal Acts and Theft (Counts XIII and XIV)

Plaintiffs bring their final two claims against Mr. Gensler and Ms. Lipscomb under Ohio Rev. Code 2307.60 and related statutes, which allow recovery by anyone injured by a criminal act or theft. (Compl., ¶¶ 295–314.) Plaintiffs also assert the theft claim against LGen Services. (*Id.*, ¶ 310.) These Defendants now move to dismiss these claims, arguing that Plaintiffs have failed to state claims upon which relief can be granted and that the claims are barred by a one-year statute of limitations. (ECF No. 50, PAGEID # 282; ECF No. 60, PAGEOD # 510.)

As to arguments by Mr. Gensler, LGen Services, and Ms. Lipscomb concerning the merits of Plaintiffs' injury through criminal acts and theft claims, Plaintiffs have sufficiently alleged that these Defendants violated the statutes as to Hi-Vac. But they have not demonstrated that Alliance has any injury in fact because of these alleged offenses.

23

The second argument requires a little more analysis. Ohio Rev. Code § 2307.60 does not contain an express statutory limitation period, so the Court must look to Ohio's general limitations statutes. *Garner v. Cleveland Clinic Found.*, No. 1:23-cv-2258, 2024 WL 2803376, at *13 (N.D. Ohio May 29, 2024). One of those general statutes is Ohio Rev. Code 2305.11(A), which states that "an action upon a statute for a penalty or forfeiture shall be commenced within one year after the cause of action accrued." The other relevant general statute is Ohio Rev. Code § 2305.07(B), which provides that "[a]n action upon a liability created by statute other than a forfeiture or penalty shall be brought within six years after the cause of action accrued."

The Ohio Supreme Court has not addressed the statute of limitations applicable to Ohio Rev. Code § 2307.60. Most courts that have considered the issue (including this one) have concluded that the one-year limitation applies because the statute is penal in nature. *See, e.g., Duffey v. Pope*, No. 2:11-cv-16, 2012 WL 4442753, at *7, (S.D. Ohio Sept. 25, 2012) (Deavers, M.J.); *Brack v. Budish*, 539 F. Supp. 3d 794, 800 (N.D. Ohio 2021) (noting that every court that had yet considered the question found that the one-year limitation applies because § 2307.60 allows for punitive damages and attorneys' fees); *Steinbrick v. Cleveland Elec. Illuminating Co.*, No. 66035, 1994 WL 463817, at *2 (Ohio Ct. App. Aug. 25, 1994) ("[B]ecause R.C. 2307.60 contemplates a penalty, we find that R.C. 2305.11(A) is the applicable statute of limitations.").

24

But that most courts have applied a particular statute of limitations is not dispositive of the issue. Rather, this Court must predict how the Ohio Supreme Court would rule if it considered the issue. *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 385 (6th Cir. 2009) (a federal court is "obliged to decide the case as [it] believe[s] the [Ohio] Supreme Court would").

In making its prediction as to how the Ohio Supreme Court would decide the statute of limitations applicable to § 2307.60, the undersigned looks to analogous decisions of that court, starting with the only decision to come close to the current issue. In *Jacobson v. Kaforey*, the Ohio Supreme Court held that § 2307.60 creates "a civil cause of action for damages." 75 N.E.3d 203, 207 (Ohio 2016). But the issue before the *Jacobson* court was a narrow one, namely a certified question as to whether § 2307.60 presented a standalone cause of action. *Id.* at 205. The court neither considered nor addressed whether the statute was remedial or penal.

So this Court turns to decisions from the Ohio Supreme Court that concern whether other statutes are remedial or penal in nature. For example, in *Cosgrove v. Williamsburg of Cincinnati Mgt. Co.*, the court looked at the statute of limitations applicable to Ohio Rev. Code § 4112.99(A), which states that "[w]hoever violates this chapter is subject to a civil action for damages, injunctive relief, or any other appropriate relief." 638 N.E.2d 991, 992 (Ohio 1994). The court concluded that § 4112.99(A) is remedial subject to a six-year statute of limitations. *Id.* at 994. The

concurring opinion[10] in that case set forth a three-part test for determining whether a statute is penal or remedial: "(1) whether the purpose of the statute is to redress individual wrongs or wrongs to the public, (2) whether recovery runs to the individual or to the public, and (3) whether the authorized recovery is wholly disproportionate (or unrelated) to the harm suffered." *Id.* at 996; *see also Cleveland Mobile Radio Sales, Inc. v. Verizon Wireless*, 865 N.E.2d 1275, 1279 (Ohio 2007) (setting forth similar factors, particularly "whether the primary purpose of the statute is to penalize or to remedy and compensate").

The Ohio Supreme Court next considered whether a statute was remedial or penal in *Rosette v. Countrywide Home Loans, Inc.*, 825 N.E.2d 599 (Ohio 2005). There, the court reversed a lower court decision finding that Ohio Rev. Code § 5301.36(C) was a penalty; that statute provides that a "mortgagor may recover, in a civil action, damages of two hundred fifty dollars" for a mortgagee's failure to record a satisfaction of a mortgage with the appropriate recorder's office within ninety days. *Id.* at 602. Although it did not expressly apply *Cosgrove's* three-part test, the *Rosette* court concluded that the wording of § 5301.36(C), which specifically calls for the recovery of "damages," made it a remedial statute and not a penalty. *Id.*

Building on that foundation, the Ohio Tenth District Court of Appeals recently analyzed whether § 2307.60 was remedial or a penalty. *Harris v. Cunix*, 187 N.E.3d 582, 584 (Ohio Ct. App. 2022). The Tenth District evaluated § 2307.60

---

[10] Justice Alice Resnick authored the concurrence, which four other Ohio Supreme Court justices joined. *Cosgrove*, 638 N.E.2d at 999 (Resnick, J., concurring).

using the *Cosgrove* factors, specifically finding that (1) the statute was intended to compensate victims rather than to punish the offender; (2) the statute provides a basis for compensating victims; and (3) even though the statute permits the recovery of punitive damages, the overall purpose of the statute is to compensate the victim for the harm suffered. *Id.* at 593. As a result, the *Harris* court broke from the then-existing line of cases to conclude "that R.C. 2307.60(A)(1) is a remedial statute subject to the six-year statute of limitations in R.C. 2305.07(B) rather than a penalty statute governed by the one-year statute of limitations in R.C. 2305.11(A)." *Id.* at 591.

Turning to the language of the statute itself, § 2307.60 provides that "[a]nyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law[.]" Applying the *Cosgrove* factors to § 2307.60 reveals that (1) the statute allows for recovery by a person injured by certain illegal actions—meaning that the statutory purpose is to redress individual wrongs; (2) recovery runs to the individual, not to the public; and (3) the statute authorizes recovery for "full damages" for the injuries suffered. As the Northern District of Ohio recently concluded, the language of § 2307.60 "supports finding it remedial as it clearly allows for the recovery of 'full damages' for injuries to person or property." *See Garner*, 2024 WL 2803376, at *14; *cf. Rice v. CertainTeed Corp.,* 704 N.E.2d 1217, 1220 (quoting *Cosgrove*, 638 N.E.2d at 997 (Resnick, J., concurring)) (noting that the availability of the remedy of punitive damages does not make a statute penal in nature and that "a law is not penal

27

merely because it imposes an extraordinary liability on a wrongdoer in favor of a person wronged, which is not limited to damages suffered by him").

Accordingly the Court concludes that § 2307.60 is remedial in nature, such that a six-year statute of limitations applies to Hi-Vac's claims for injury through criminal acts or theft, and they are not time barred.

\*    \*    \*

For the foregoing reasons, the Court **GRANTS** Mr. Gensler and LGen Services' Motion (ECF No. 50) and Ms. Lipscomb's Motion (ECF No. 60) with respect to:

- Alliance's claims for state and federal RICO violations, fraud, conversion, unjust enrichment, conspiracy, injury through criminal acts, and theft (Counts I, II, III, IX, XI, XII, XIII, and XIV);
- Hi-Vac's fraud claim against LGen Services (Count III); and
- Hi-Vac and Alliances' fiduciary duty claims (Count VIII).

The Court **DENIES** the Motions with respect to:

- Hi-Vac's claims for state and federal RICO violations, conversion, unjust enrichment, conspiracy, injury through criminal acts, and theft (Counts I, II, IX, XI, XII, XIII, and XIV);
- Hi-Vac's fraud claim against Mr. Gensler and Ms. Lipscomb (Count III);
- Hi-Vac and Alliances' state and federal misappropriation of trade secrets claims (Counts IV and VI); and
- Hi-Vac and Alliances' breach of contract claims (Count X).

## B.  Motion to Dismiss filed by Defendant Curtis Coley (ECF No. 95)

In May 2019, Daniel retained his brother, Curtis, as an "independent agent" to represent Hi-Vac in transactions with Carylon Corporation of Companies. (Compl., ¶ 126.) In exchange, Curtis was to receive a fee based on the profits from the sales to Carylon, and he executed an Independent Consulting and Service Agent

28

Agreement under which he would be paid certain commissions and advances. (*Id.*, ¶¶ 127–29; ECF No. 1-7.) Additionally, from January 2020 until his termination in April 2022, Curtis served as Hi-Vac's Director of Commercial Sales. (*Id.*, ¶ 14.)

The Complaint asserts seven claims against Curtis stemming from $42,000 of allegedly unpaid advances that Hi-Vac disbursed to him under the consulting agreement. (Compl., ¶¶ 126, 129, 156–217, 264–75.) Plaintiffs allege that during the time Curtis was supposed to be transacting with Carylon on Hi-Vac's behalf, Hi-Vac did not do any business or make any sales to Carylon or any of its affiliates. (*Id.*, ¶¶ 130–31.) Despite this, the $42,000 was never reconciled or clawed back from Curtis. (*Id.*, ¶ 32.)

At the outset, Alliance does not have standing to assert these seven claims against Curtis. Alliance has not shown an injury in fact because of Curtis's conduct—the only funds at issue are those Hi-Vac advanced to him. (Compl., ¶ 205.) Further, the operative agreement for purposes of Alliance's breach of contract claim is the consulting agreement executed only between Curtis and Hi-Vac (ECF No. 1-7). Unlike the confidentiality agreements signed by the other Defendants, the consulting agreement does not provide for Alliance's involvement or participation, whether through references to its status as Hi-Vac's "Affiliate" or otherwise. (*Id.*) Thus, Alliance's claims against Curtis are **DISMISSED**.

The Court now turns to the merits of Hi-Vac's claims against Curtis.

### 1.     Racketeering (Counts I and II)

As discussed above, to establish a substantive RICO violation, a plaintiff must show, among other elements, the existence of an enterprise and "a pattern of racketeering activity." 18 U.S.C. § 1962(c). A pattern consists of two or more predicate acts of racketeering activity within ten years of each other. *Id.*, § 1961(5). The plaintiff must demonstrate that the predicate acts "are related and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237–39 (1989) (emphasis omitted) ("[T]he term pattern itself requires the showing of a relationship between the predicates and of the threat of continuing activity. It is this factor of continuity plus relationship which combines to produce a pattern."). Whether certain acts make a pattern is measured on a spectrum. *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1110 (6th Cir. 1995). Typically, that a defendant engaged in a single scheme against a single victim is not considered a pattern. *Id.*; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 723–25 (6th Cir. 2006) (collecting cases).

Here, Hi-Vac has failed to point to an enterprise or a pattern of predicate acts to support its claims against Curtis. As to the enterprise, the Complaint alleges that Curtis improperly retained $42,000 in advances, which Hi-Vac disbursed to him in seven installments. (Compl., ¶ 129.) These are the only allegations with respect to Curtis—there are no specific assertions of his wrongdoing apart from the retained advances. A defendant must have "conducted or participated in the conduct of the 'enterprise's affairs,' not just their *own* affairs." *Ouwinga*, 694 F.3d at 792 (citation omitted) (emphasis in original); *see also RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325,

343 (2016) ("[A] single person cannot be both the RICO enterprise and the RICO defendant."). Curtis could not have perpetuated an enterprise comprised only of himself, and Hi-Vac's generalized and conclusory allegations that Curtis coordinated with and "bought in wholeheartedly to Dan Coley's schemes" are insufficient, particularly since Curtis was not working at Hi-Vac during the consultancy period at issue. (*Id.*, ¶¶ 35, 161.)

Looking to whether the Complaint establishes a pattern of racketeering activity, Hi-Vac insists that Curtis's retention of each of the seven distinct payments amounts to a predicate act of either fraud or embezzlement. (ECF No. 98, PAGEID # 913–14.) The Court disagrees. Although Curtis received seven payments, each was provided for under his single consultant agreement, and each was subject to a single annual reconciliation. (Compl., ¶ 128; ECF No. 1-7.) This conduct does not amount to a "pattern" of racketeering activity. *See, e.g.*, *Goff v. Nationwide Mut. Ins. Co.*, No. 2:18-cv-340, 2019 WL 7604826, at *7 n.11 (S.D. Ohio Sept. 30, 2019) (Watson, J.) (collecting cases finding that individual payments are not predicate acts).

Accordingly, Curtis's Motion is **GRANTED** as to Hi-Vac's RICO and OCPA claims.

### 2. Fraud (Count III)

Other than noting the generalized nature of Hi-Vac's fraud claim, Curtis does not offer argument as to why it should be dismissed. (ECF No. 95, PAGEID # 890.) "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at

developed argumentation, are deemed waived," and "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997). The Court refuses to do so here.

### 3. Breach of Contract (Count X)

Hi-Vac next contends that Curtis breached the consulting agreement by retaining advanced commissions that he knew he had not earned because he had not made any sales to Carylon. (Compl., ¶ 130–32.) In response, Curtis points to the "clear and unambiguous" language in the consulting agreement places the burden on Hi-Vac to collect those advances rather than on Curtis to affirmatively return them. (ECF No. 95, PAGEID # 889, 891; ECF No. 1-7, PAGEID # 113 ("[A]ll commission advancement will be reconciled by year end.").) Hi-Vac disagrees with Curtis's interpretation, arguing that the same language clearly and unambiguously supports the opposite interpretation. (ECF No. 98, PAGEID # 910.)

For purposes of the instant Motion, the Court finds that the consulting agreement's terms as to whether Hi-Vac was obligated to demand repayment from Curtis are ambiguous, leaving an issue of fact that is more appropriate for discovery. *See, e.g.*, *Childress v. Bank of Am., N.A.*, No. CV 18-154-DLB-CJS, 2019 WL 3767464, at *5 (E.D. Ky. Aug. 9, 2019). The consulting agreement simply provides that "all commission advancement will be reconciled by year end"—it is silent as to who is responsible for the reconciliation and what is required of the parties thereafter. On a motion to dismiss, the entirety of the Complaint and its

attachments (including the consulting agreement) are to be considered, resolving inferences and ambiguities in a plaintiff's favor. *Rembisz v. Lew*, 590 F. App'x 501, 504 (6th Cir. 2014). Accordingly, Curtis's Motion on this ground is **DENIED**.

### 4.    Unjust Enrichment (Count XI)

Curtis's sole argument against Hi-Vac's unjust enrichment claim is that Hi-Vac may not maintain this claim in the alternative because of the existence of the consulting agreement. (ECF No. 95, PAGEID # 895.) As explained previously, because "the scope of the parties' contract remain[s] to be developed in discovery, … it would be premature to dismiss [the] unjust enrichment claim at this stage in the litigation." *Highman*, 2020 WL 6204344, *3; (*see also, supra,* Section III.A.8.) Curtis's Motion is **DENIED**.

### 5.    Conversion (Count IX) and Theft (Count XIV)

Curtis's arguments as to Hi-Vac's conversion and theft claims mirror those he raised to support dismissal of Hi-Vac's breach of contract claim—namely, that Hi-Vac was obligated to demand repayment from Curtis, and by not doing so, Hi-Vac lost its opportunity to claim that Curtis converted or stole its property. (ECF No. 95, PAGEID # 896.) Because more discovery is needed to determine the propriety of this argument, and because Hi-Vac has otherwise stated a claim for conversion, Curtis's Motion is **DENIED**.

*             *             *

For the foregoing reasons, the Court **GRANTS** Curtis's Motion (ECF No. 95) with respect to:

- Alliance's claims for state and federal RICO violations, fraud, conversion, breach of contract, unjust enrichment, and theft (Counts I, II, III, IX, X, XI, and XIV); and
- Hi-Vac's claims for state and federal RICO violations (Counts I and II).

The Court **DENIES** the Motion with respect to:

- Hi-Vac's claims for fraud, conversion, breach of contract, unjust enrichment, and theft (Counts III, IX, X, XI, and XIV).

### C.    Motion to Dismiss filed by Plaintiffs (ECF No. 80)

The final motion currently ripe (ECF No. 80) is Plaintiffs' request to dismiss Count II of Daniel's Amended Counterclaim,[11] which is a claim for "unjust enrichment/quantum meruit." (ECF No. 79, PAGEID # 689.) Daniel alleges that he brings this claim in the alternative to his breach of contract claim "in case the Court finds the [contract] to be unenforceable in whole or in part." (ECF No. 87, PAGEID # 839.)

As discussed, there is conflicting authority as to whether a party may plead unjust enrichment as an alternative theory of recovery where the parties do not dispute that a valid, enforceable contract controls. (*See, supra,* Section III.A.8.) Because "the scope of the parties' contract remain[s] to be developed in discovery, … it would be premature to dismiss [the] unjust enrichment claim at this stage in the litigation." *Highman*, 2020 WL 6204344, *3.

Accordingly, Plaintiffs' Motion to Dismiss (ECF No. 80) is **DENIED.**

---

[11] Because Daniel filed an amended counterclaim (ECF No. 79), the Motion to Dismiss the original, non-operative counterclaim (ECF No. 71) is **DENIED as moot**.

IV.     CONCLUSION

For the reasons set forth above, the Motion to Dismiss filed by Mr. Gensler and LGen Services (ECF No. 50) and the Motion to Dismiss filed by Ms. Lipscomb (ECF No. 60) are **GRANTED in part** and **DENIED in part**. Alliance's claims for federal and state RICO violations, fraud, conversion, unjust enrichment, conspiracy, injury through criminal acts, and theft (Counts I, II, III, IX, XI, XII, XIII, and XIV); Hi-Vac's fraud claim against LGen Services (Count III); and Hi-Vac and Alliances' fiduciary duty claims (Count VIII) are **DISMISSED**. Plaintiffs' remaining claims may proceed.

The Motion to Dismiss filed by Curtis Coley (ECF No. 95) is **GRANTED in part** and **DENIED in part**. Each of Alliance's claims against Curtis and Hi-Vac's claims for state and federal RICO violations are **DISMISSED**. Hi-Vac's remaining claims may proceed.

The Motion to Dismiss Count II of Daniel Coley's Amended Counterclaim filed by Plaintiffs (ECF No. 80) is **DENIED**.

    **IT IS SO ORDERED.**

                              s/ Sarah D. Morrison_____
                              **SARAH D. MORRISON**
                              **CHIEF UNITED STATES DISTRICT JUDGE**