**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**HI-VAC CORPORATION, *et al.*,**

      **Plaintiffs,**

                                **Civil Action 2:23-cv-4184**
                                **Chief Judge Sarah D. Morrison**
  **v.**                            **Magistrate Judge Elizabeth P. Deavers**

**DANIEL J. COLEY, *et al.*,**

      **Defendants.**

<u>**OPINION AND ORDER**</u>

    This matter is before the Court to consider a Motion to Quash and for a Protective Order filed by Defendant Brian Gensler ("Gensler") relating to a subpoena directed by Plaintiff Hi-Vac Corporation ("Hi-Vac") to nonparty J.P. Morgan Chase Bank.  (ECF No. 110.)  Hi-Vac has responded in opposition and Gensler has filed a reply.  (ECF Nos. 111, 113.)  For the following reasons, the Motion is **DENIED.**

    As a preliminary matter, the Court notes that Local Rule 37.1 requires the parties to "exhaust[ ] among themselves all extrajudicial means for resolving their differences" before filing an objection, motion, application, or request relating to discovery. S.D. Ohio Civ. R. 37.1. Local Rule 37.1 also allows parties to first seek an informal telephone conference with the Judge assigned to supervise discovery in the case, in lieu of immediately filing a discovery motion. *Id.* The Court's Preliminary Pretrial Order requires the parties to arrange a conference with the Court if they are unable to reach an agreement ***on any matter related to discovery***.  (ECF No. 84) (emphasis in original).

There is no evidence that the parties meaningfully complied with Local Rule 37.1 or the Court's Preliminary Pretrial Order.  To be clear, Gensler does not acknowledge any obligation in his motion.  For its part, Hi-Vac notes that Gensler's counsel merely mentioned his intention to file the current motion in a meet and confer but no negotiation occurred.  In reply, Gensler attempts to minimize his disregard of the Court's rules, orders, and time by suggesting that, ***technically***, the plain language of Local Rule 37.1 does not apply to motions brought under Rule 45.  His counsel, via a footnote, then makes a half-hearted offer to confer.

Gensler's status as a Defendant in this case makes counsel's position ***particularly*** disingenuous and completely at odds with both the spirit of Local Rule 37.1 and the Court's expectations of counsel's professionalism.  Moreover, "generally, a subpoena is a discovery device subject to the same deadlines as other forms of discovery set forth in the court's scheduling order" bringing it well within the realm of counsel's obligation to confer under the circumstances here.  *Rowley v. City of New Bedford,* No. CV323MC00003RGJCHL, 2023 WL 3012578, at *3 (W.D. Ky. Apr. 19, 2023) (citations omitted).  Nevertheless, in this limited circumstance, the Court will consider the briefing but warns the parties that failure to comply with the Court's Order and Local Rule 37.1 in the future **<u>will</u>** result in the summary denial of any discovery motion.

## I.

For purposes of the current motion, Gensler explains that he is a former employee of Hi-Vac, having worked there from approximately September 2017 until September 2020.  (ECF No. 110 at ⁋ 3.)  According to Gensler, all of the claims asserted against him "stem from a hunting lease used in connection with Hi-Vac's business and clients for which expenses were paid [by]

Gensler personally and later [by] L-Gen." (*Id.*) In its response, Hi-Vac fills in some gaps, summarizing from its perspective as follows. (ECF No. 111 at 1-2.) Hi-Vac alleges that Gensler conspired with other employees to commit civil violations of RICO, the Ohio Corrupt Practices Act, Fraud, Conversion and other related torts by using their fiduciary positions to personally profit from Hi-Vac's business by engaging in numerous fraudulent transactions. (*Id.*) Although Gensler worked at Hi-Vac from September 25, 2017, until September 9, 2020, the co-conspirators continued to work at Hi-Vac until April 25, 2022, and May 31, 2022. (*Id.*) The co-conspirators actively worked to conceal the conspiracy and as a result, Hi-Vac was not able to understand the complex nature of what had occurred until approximately April 2022. (*Id.*)

Following the Court's Opinion and Order addressing various motions to dismiss, the following claims remain pending against Gensler:

- Hi-Vac's claims for state and federal RICO violations, conversion, unjust enrichment, conspiracy, injury through criminal acts, and theft (Counts I, II, IX, XI, XII, XIII, and XIV);

- Hi-Vac's fraud claim against Mr. Gensler and Ms. Lipscomb (Count III);

- Hi-Vac and Alliances' state and federal misappropriation of trade secrets claims (Counts IV and VI); and

- Hi-Vac and Alliances' breach of contract claims (Count X).

(ECF No. 104 at 28.)

By way of further background relevant to the current motion, Hi-Vac explains that on May 24, 2024, it propounded a request for production of documents on Gensler seeking, *inter alia*, "…all bank statements for any and all bank accounts through which You or L-Gen Services accepted or disbursed funds concerning any of the transactions or occurrences discussed in the

Complaint for the period of March 24, 2015 to present." (*See* ECF No. 111-3 at 8; Request No. 24.)   In his response to this request Gensler stated: "Defendant objects to this request as it is not reasonably calculated to lead to the discovery of admissible or relevant evidence and seeks confidential information that is protected from disclosure by applicable rules and rights to privacy. Subject to this objection and without waiver of same, Defendant is producing redacted copies of bank statements showing transactions relating to the deer lease." *Id*. Consistent with this response, Gensler produced only redacted statements from 2017-2020.  In its deficiency letter, Hi-Vac advised:

> Plaintiffs require this information to verify whether other illegal Hi-Vac transactions occurred utilizing these accounts and/or whether other parties were involved. Plaintiffs also require this information to subpoena the original records of these accounts in order to verify them. Therefore, the request is relevant and the information that is requested is not confidential.  Additionally, there has been a protective order entered in this case and the objection on the grounds of confidentiality is therefore improper. Please supplement this response with non-redacted documents.

(*Id*.)

On October 9, 2024, Hi-Vac filed a notice of subpoena to Non-Party JP Morgan Chase Bank requesting the account statements of Brian Gensler from September 1, 2017, through January 1, 2023.  (ECF No. 108.)

**II.**

As noted, Gensler moves both to quash the subpoena at issue and for a protective order. Plaintiff's motion implicates distinct procedural rules, Rule 26 and Rule 45.  The Court explains the applicable legal standards in turn, starting with Rule 45.

### A. Motion to Quash

Rule 45 of the Federal Rules of Civil Procedure "governs discovery from non-parties, including the right to command a non-party to, *inter alia*, produce documents." *Taylor v. Universal Auto Grp. I, Inc.*, No. 14-MC-50, 2015 WL 1810316, at *4 (S.D. Ohio Apr. 17, 2015) (citing Fed. R. Civ. P. 45(a)(1)). Rule 45 provides that "the court for the district where compliance is required must quash or modify a subpoena that ... requires disclosure of privileged or other protected matter ... or subjects a person to undue burden." *Id.* (citing Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv)). "In determining whether a subpoena imposes an undue burden, a court considers 'such factors as relevance, the need of the [requesting] party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *Kacmarik v. Mitchell*, No. 1:15CV2062, 2017 WL 131582, at *5 (N.D. Ohio Jan. 13, 2017) (quoting *Hogan v. Cleveland Ave. Rest., Inc.*, No. 2:15-cv-2883, 2016 WL 7467968 at *2 (S.D. Ohio Dec. 28, 2016)) (citing *Am. Elec. Power Co. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)). Ultimately, "[c]ourts must balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of that person as a non-party is a factor." *In re: Modern Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (citations and quotations omitted).

The party seeking to quash a subpoena bears the ultimate burden of proof. *Hendricks v. Total Quality Logistics*, 275 F.R.D. 251, 253 (S.D. Ohio May 6, 2011) (citing *White Mule Co. v. ATC Leasing Co. LLC,* 2008 WL 2680273, at *4 (N.D. Ohio June 25, 2008)). If the discovery sought appears "relevant on its face, the party resisting the discovery has the burden to establish the lack of relevance" but "when relevancy is not apparent on the face of the request, the party

seeking the discovery has the burden to show the relevancy of the request." *Id.* (citation omitted). Finally, courts recognize that "[t]here is no inherent privacy right in financial information such that the Court is required by Rule 45 to quash a subpoena." *PCA-Corr., LLC v. Akron Healthcare LLC*, No. 1:20-CV-428, 2021 WL 2043118, at *5 (S.D. Ohio May 21, 2021) (citing *Simonoff v. Saghafi*, No. 1:17 CV 2574, 2018 WL 11306069, at *2 (N.D. Ohio May 18, 2018)). "So, when addressing motions to quash, federal courts commonly place the burden on the party claiming the privilege of avoiding disclosure." *Id.* (citing *State Farm Mut. Ins. Co. v. Policherla*, No. 08-13939, 2009 WL 2170183, at *3 (E.D. Mich. July 20, 2009). If that party shows that the information falls into a protected category and that disclosure may be harmful, then the burden shifts to the requesting party to establish relevance and the need for the information. *Id.* The court then weighs the parties' respective interests. *Id.*

Courts "have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011) (citation omitted). Rule 26 limits the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense ...." Fed. R. Civ. P. 26(b)(1). Determining the scope of discovery is within the Court's discretion. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998).

### B. Motion for a Protective Order

"'Even in the absence of standing to move to quash, courts within the Sixth Circuit have interpreted Rule 26(c) to permit a party to seek a protective order to preclude discovery demanded by a third-party subpoena.'" *Morris v. Kia Motors Corp.,* No. 2:24-MC-51120, 2024 WL 4595116, at *2 (E.D. Mich. Oct. 28, 2024) (quoting *Pictsweet Co. v. R.D. Offutt Co.*, No.

3:19-cv-0722, 2020 WL 12968432, at *3 (M.D. Tenn. Apr. 23, 2020) and citing *Bridgestone Ams., Inc. v. Intn'l Business Machs. Corp.*, No. 3:13-cv-1196, 2016 WL 11786198, at *5 (M.D. Tenn. May 16, 2016) ("Where discovery is requested from a third party and the information sought affects a litigant's interests, the litigant may seek a protective order on behalf of the third party.")).

"Under Federal Rule of Civil Procedure 26(c)(1), a district court may grant a protective order preventing the production of discovery to protect a party or entity from 'annoyance, embarrassment, oppression, or undue burden or expense." *Morris,* 2024 WL 4595116, at *2 (quoting *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 235 (6th Cir. 2016)). Additionally, a district court is tasked with balancing "the right to discovery with the need to prevent fishing expeditions." *Id.* (quoting *Ohio Execution Protocol Litig.* at 236-237) (internal quotation marks and citation omitted)). "To sustain a protective order under Rule 26(c), the moving party must show good cause for protection from one (or more) harms identified in Rule 26(c)(1)(A) with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Id.* (quoting *Ohio Execution Protocol Litig.* at 236) (internal quotation marks and citation omitted). "Good cause exists if specific prejudice or harm will result from the absence of a protective order." *Id.* (internal quotation marks and citation omitted); *see also Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) ("To show good cause, a movant for a protective order must articulate specific facts showing clearly defined and serious injury resulting from the discovery sought and cannot rely on mere conclusory statements.").

**III.**

Initially, Hi-Vac asserts that Gensler, as a party, does not have standing to object to the subpoena directed to a non-party. Hi-Vac is correct that, typically, a party does not have standing to challenge a subpoena issued to a non-party.  Nevertheless, where a party successfully asserts "'some personal right or privilege with regard to the documents sought,'" that party will have standing. *Mann v. University of Cincinnati*, Nos. 95-3195 and 953292, 1997 WL 280188, at \*4 (6th Cir. May 27, 1997) (quoting 9A Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2459 (1995)); *see also Hackmann v. Auto Owners Ins. Co.*, No. 2:05-cv-876, 2009 WL 330314, at \*1 (S.D. Ohio Feb. 6 2009) (noting that a party would have standing to move to quash a subpoena served upon a nonparty if that party had "a claim of some sort of personal right or privilege"). "Personal rights or privileges supporting a claim to standing 'have been recognized with respect to personal bank records, information in a personnel file, corporate bank records, or Indian tribal records.'" *Riding Films, Inc. v. John Does 129-193*, No. 2:13-CV-46, 2013 WL 3322221, at \*4 (S.D. Ohio July 1, 2013) (quoting *Waite, Schneider, Bayless & Chesley Co. L.P.A. v. Davis,* No. 1:11-CV-0851, 2013 WL 146362, at \*5 (S.D. Ohio Jan. 14, 2013)); *see also Fusion Elite All Stars v. Varsity Brands, LLC,* 340 F.R.D. 255, 260 (W.D. Tenn. 2022) (noting that a party has a personal interest in banking records of a party that are in the possession of a financial institution).  The issue of standing "is a threshold issue which the Court must consider before addressing the merits" of any challenges to the subject subpoenas. *Waite, Schneider, Bayless & Chesley Co. L.P.A.*, 2013 WL 146362, at \*5.

Here, there is no dispute that the subpoena seeks Gensler's bank account statements from September 1, 2017, through January 1, 2023.  This is sufficient to confer standing on Gensler for purposes of objecting to the subpoena.  Accordingly, the Court will construe Gensler's motion as

a Motion to Quash and apply the applicable legal standards. *See, e.g.*, *Pictsweet,* 2020 WL 12968432, at *4 (M.D. Tenn. Apr. 23, 2020) (finding defendant had standing to move to quash one subpoena and evaluating under that standard but that same defendant did not have standing to move to quash a second subpoena and evaluating as a motion for a protective order under Rule 26.) To be clear, possessing standing to bring a motion, however, does not equate to a certainty of prevailing on that motion.

Gensler, accusing Hi-Vac of pursuing a fishing expedition, objects to the disclosure of the requested bank records, contending that he already has produced bank statements from the same account for the time period of the hunting leases until LGen Services, LLC was formed. Gensler explains that, after the LLC was formed, all expenses were made through the entity and not his personal account. According to Gensler, the account at issue is a joint account that he shares with his wife and children who are not parties to this litigation. He acknowledges that the statements he produced contained redactions of what he describes as "non-relevant portions" including a balance summary showing all deposits and withdrawals, a description of his savings and retirement accounts, and personal information such as his address or personal purchases. He states that, despite these redactions, he has produced receipts and other documents for transactions related to the hunting lease and other materials relevant to Plaintiffs' claims against him. In Gensler's view, the universe of funds at issue here is comprised of funds Hi-Vac approved and paid to Gensler such that Hi-Vac has its own complete record of the relevant funds.

Not surprisingly, Hi-Vac has a different view. Hi-Vac contends that it needs copies of the records, unredacted by Gensler, to verify the authenticity of the accounts and to verify

whether any funds and transactions have been improperly sent to or from other individuals. Further, Hi-Vac challenges Gensler's representation that any account activity of his wife Lori is not relevant. As Hi-Vac explains, from approximately 2015-2022 L-Gen Services was not a limited liability company but an unincorporated business owned by Gensler and his wife. Thus, Lori Gensler is personally liable for L-Gen Services' liabilities for that time period. Hi-Vac defends the time frame of its request, noting that it is less than six years and covers the entire time period of the alleged conspiracy.

There is no need to belabor it. As the above authority confirms, for purposes of his motion to quash, it is Gensler's burden to show that the subpoenaed bank records warrant protection and that their disclosure may be harmful. Gensler has not come close to meeting his burden here. First, at best, Gensler raises confidentiality or privacy concerns. Again, however, "[t]here is no inherent privacy right in financial information such that the Court is required by Rule 45 to quash a subpoena." *Covert Mfg., Inc. v. Covert Innovations, LLC.*, No. 1:21-CV-1682-DAR, 2024 WL 904404, at *4 (N.D. Ohio Mar. 1, 2024) (quoting *Simonoff,* 2018 WL 11306069, at *2). Indeed, to the extent Gensler relies on these concerns, such concerns routinely are considered to be insufficient grounds to quash a subpoena. *Id.* at 5 (citing *Hopp v. Arthur J. Gallagher & Co.,* No. 1:18CV507, 2019 WL 2295346, at *2 (N.D. Ohio May 30, 2019)). That is particularly true where, as here, a protective order, ECF No. 86, is in place. *Id.* Moreover, Gensler has made no effort at a specific showing that the disclosure of the information may be harmful.

Instead of addressing, or, for that matter, even recognizing, the nature of his burden with respect to his motion, Gensler offers only extraneous arguments. First, he argues that he already

has produced the documents to which the subpoena is directed. Even if this were a factor for the Court's consideration on a motion to quash, it would not help Gensler's position. By his own admission he produced only the documents he deemed to be responsive and produced them with his unilaterally made redactions as to relevance.[1] Beyond this, to the extent that he may be suggesting some form of undue burden presented by complying with the subpoena, that is an argument only Chase, as the entity responding to the subpoena, has standing to make. *Covert Mfg.,* 2024 WL 904404, at *3. Finally, Gensler argues that Hi-Vac already has a complete record of the funds from its own transactions. This argument fails to recognize that, as Hi-Vac points out, there could be evidence of other transactions involving co-defendants or others which are relevant to its claims. That is, limited to its own records, Hi-Vac simply cannot know what it does not know.

Finally, as explained above, the Court determined that Gensler has standing to move to quash and has considered his motion under Rule 45. If the Court were to consider Gensler's request for a protective order under Rule 26, in the exercise of its discretion, it would reach a similar result. The Court is satisfied that the bank records are relevant. Hi-Vac explains that the records sought may show evidence of other transactions or the involvement of other defendants. Further, it asserts the records will assist in verifying the accuracy of other documents obtained in discovery. The Court also is satisfied that the time frame of the requested bank statements is not

---

[1] In making this argument, the Court notes that Gensler apparently disregards the decisions from courts in this Circuit repeatedly holding that "unilateral redaction by a producing party on the basis of relevance is not permitted." *Sazerac Co., Inc. v. Republic Nat'l Distrib. Co., LLC*, No. 3:23-CV-00025-GNS-LLK, 2024 WL 4425693, at *2 (W.D. Ky. Oct. 4, 2024) (citing *Carr v. Lake Cumberland Reg'l Hosp., LLC*, No. 6:15-CV-138-DLB-HAI, 2018 WL 11422437, at *2 (E.D. Ky. Feb. 2, 2018) (collecting cases)).

overly broad given the time period of the conspiracy allegations. For his part, Gensler has

wholly failed to demonstrate that he will be subject to annoyance, embarrassment, oppression, or

undue burden or expense because of the non-party's compliance with the subpoena. That is,

Gensler has failed to make a particular and specific demonstration of fact. Instead, he offers

nothing beyond stereotyped and conclusory statements. In the absence of any meaningful record

addressed to these issues, Gensler has not established any basis for the entry of a protective order

relating to the bank records.

**IV.**

For the reasons stated above, the Motion to Quash and for Protective Order (ECF No.

110) is **DENIED.**

**IT IS SO ORDERED.**


DATED: **January 24, 2025**           **/s/ *Elizabeth A. Preston Deavers***
                                      **ELIZABETH A. PRESTON DEAVERS**
                                      **UNITED STATES MAGISTRATE JUDGE**